**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

---

RUSSELL HARRIS,                             :
               Plaintiff,          :
                             :
        v.                               :          No. 5:19-cv-01965
                             :
KEYSTONE CEMENT CO.,                        :
               Defendant.          :

---

**O P I N I O N**

**Defendant's Motion for Summary Judgment, ECF No. 49—GRANTED**

**Joseph F. Leeson, Jr.**                                    **February 22, 2021**
**United States District Judge**

## I.  INTRODUCTION

In this employment discrimination action, *pro se* Plaintiff Russell Harris alleges that his former employer, Keystone Cement Co. ("Keystone"), discriminated and retaliated against him due to his race.  Discovery has been completed, and Keystone now moves for summary judgment as to all of Harris's claims.[1]  Upon consideration of Keystone's motion for summary judgment, Harris's opposition thereto,[2] and the undisputed factual record before the Court, for the reasons set forth below Keystone's motion is granted.

---

[1]    It is not clear exactly what claims Harris, who is African American, is asserting.  While the form complaint he utilized in commencing this action leaves blank the precise nature of the discrimination he alleges other than "[u]nequal terms and conditions of my employment," ECF No. 2 at 3, the Court liberally construes Harris's allegations to be asserting claims of race-based discrimination, hostile work environment, and retaliation, in violation of Title VII of the Civil Rights Act of 1964.

[2]    Harris's filings in opposition are significantly deficient in several respects.  The Court discusses the consequences of these deficiencies in detail further below.

## II.      LEGAL STANDARDS & FILING DEFICIENCIES

### A.      The substantive summary judgment standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The moving party bears the initial burden of establishing that no genuine issue of material fact exists.  *Bacon v. Avis Budget Grp., Inc.*, 357 F. Supp. 3d 401, 412-13 (D.N.J. 2018).  In determining if the moving party has satisfied this burden, the Court is obliged to construe all facts and factual inferences in the light most favorable to the non-moving party.  *See United States ex rel. Simpson v. Bayer Corp.*, 376 F. Supp. 3d 392, 401 (D.N.J. 2019); *Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Bacon*, 357 F. Supp. 3d at 413 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Where the movant shows a *prima facie* entitlement to summary judgment, the burden shifts to the non-movant to point to record evidence creating a genuine issue of material fact. *See* FED. R. CIV. P. 56(e); *Davis v. Quaker Valley Sch. Dist.*, No. 13-1329, 2016 WL 912297, at *8 (W.D. Pa. Mar. 10, 2016), *aff'd*, 693 F. App'x 131 (3d Cir. 2017).  "[T]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact."  *Gibson-Reid v. Lendmark Fin. Servs., LLC*, No. 2:19-CV-02859, 2019 WL 4139034, at *1 (E.D. Pa. Aug. 30, 2019) (quoting *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007)); *see Schoch v.*

*First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990) ("[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."). Summary judgment is mandated where a non-moving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. . . . [T]here can be 'no genuine issue of material fact'" where "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

### B. Required summary judgment filings

To assist the Court in determining whether a party is entitled to judgment based on the material, undisputed facts, Federal Rule of Civil Procedure 56 provides specific directives as to how purportedly undisputed (or disputed) facts must be presented in summary judgment filings. Specifically, Rule 56(c) states as follows:

> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> \* \* \*
>
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.

Rule 56(e) further provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."

To further effectuate the purpose of Rule 56, this Court's Policies and Procedures provide the following instructions:

> <u>Responses to Motions for Summary Judgment - Required Answer to Moving Party's Statement of Undisputed Facts</u> A party opposing a motion for summary judgment shall file a separate, short, and concise statement responding to the numbered paragraphs set forth in the moving party's statement of undisputed facts and shall either concede the facts as undisputed or state that a genuine dispute exists. If the opposing party asserts a genuine dispute exists as to any fact, the party shall cite to the specific portion(s) of the record that create the dispute, including the exhibit, page, and line number. The opposing party shall also set forth in enumerated paragraphs any additional material facts that the party contends preclude summary judgment. When a factual assertion cites to a deposition transcript, counsel shall attach a copy of the entire transcript containing the cited text. All facts set forth in the moving party's statement of undisputed facts shall be deemed admitted unless controverted.

Leeson, J., Policies and Procedures §§ (II)(F)(9).

### C.    The *pro se* litigant standard and deficiencies in Harris's opposition to Keystone's motion for summary judgment

It is well known that courts have an obligation to construe the filings of *pro se* litigants liberally.  *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009).  Although *pro se* litigants are entitled to liberality with respect to the substance of their filings, "[a]the end of the day, they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).  In the context of summary judgment motion practice, that means a *pro se* plaintiff "must still set forth facts sufficient to survive summary judgment." *Alford v. Owen*, No. CIV.A.03-795, 2005 WL 2033685, at *4 (D.N.J. Aug. 23, 2005); *see Urbas v. Filipczak*, No. CV 17-13039, 2020 WL 256071, at *4 (D.N.J. Jan. 17, 2020) ("Even as to a *pro*

*se* plaintiff, Rule 56 requires more than reliance on allegations (and vague ones at that) in opposition to a properly supported motion for summary judgment. A party must proffer sufficient evidence to allow a jury to find in its favor at trial." (internal citation and quotation omitted)).

Here, Harris's filings in opposition to Keystone's motion for summary judgment are severely deficient.  In particular, Harris has filed nothing in response to Keystone's statement of undisputed material facts.  He has only submitted a five-page document appearing to contain a mix of factual representations and argument, *see* ECF No. 53, along with an accompanying binder containing documents and information he believes support his entitlement to relief, *see* ECF Nos. 57-58.[3]  However—and critically—neither his memorandum nor his supporting documents dispute, or even correlate, to the facts of this case as presented in Keystone's statement of undisputed material facts.[4]  Moreover, it is far from clear how many of the documents presented in Harris's opposition filings are relevant to his claims; nor is it clear that these documents, even if they presented relevant information, would be admissible at trial.  The opposite appears to be true.  For example, many of Harris's documents are self-serving written

---

[3]   These documents were not filed by Harris with the Clerk's Office, but were rather mailed directly to the Undersigned's Chambers, in direct contravention of the applicable *pro se* guidelines.  *See* ECF No. 5 at 3 ("Do not send documents directly to the District Judge or Magistrate Judge assigned to your case. All documents must be filed with the Clerk of Court at [the appropriate address].").  Additionally problematic is the fact several of the documents contain confidential personal information.  The Court has taken it upon itself to docket Harris's documents, separating out those that contain potentially confidential information and filing them separately under seal.  *See* ECF Nos. 57-58.

[4]   It appears these documents are in large part intended to rebut certain representations made by Keystone as part of the Equal Employment Opportunity Commission ("EEOC") investigatory process.  *See* ECF No. 53, at 1 ("The Defendant has made inaccurate assertions since their entry into this process. These assertions were made in their initial response to the EEOC and these same assertions have remained the backbone of their defense throughout this entire process.").

statements reiterating his theory of discrimination, as well as his own reproduction of text message conversations with commentary sprinkled in.  Other documents he has submitted in opposition to Keystone's motion include technical documents related to Keystone's production of concrete, and duplicative copies of Equal Employment Opportunity Commission ("EEOC") filings and filings in the instant matter.

The deficiencies in Harris's summary judgment filings directly contravene the directives of Rule 56, the applicable *pro se* guidelines, this Court's Policies and Procedures, and this Court's prior Orders.[5]  Therefore, in the absence of "a separate, short, and concise statement responding to the numbered paragraphs set forth in the [Keystone's] statement of undisputed facts," the Court limits its consideration of material facts to those put forward by Keystone.[6]  The Court deems those facts uncontested where they are supported by citations to admissible

---

[5]     Harris was put on notice multiple times that it was his duty as a *pro se* litigant to ensure that his filings were in compliance with the applicable federal and local rules, as well as this Court's Policies and Procedures.  *See pro se* guidelines, ECF No. 5, at 4 (advising that "[y]our case is subject to the Federal Rules of Civil Procedure and the Eastern District of Pennsylvania's Local Rules of Civil Procedure, which you can find on the Court's website."); Court Order of November 3, 2020, ECF No. 50, at 1 ("Plaintiff is further notified that it is his responsibility to ensure that any filing in opposition to Defendant's motion conforms to the applicable federal and local rules of civil procedure, as well as the Undersigned's Policies and Procedures."); Court Order of December 1, 2020, ECF No. 52, ¶ 2 ("Plaintiff is further NOTIFIED that it is his responsibility to ensure that any filings in opposition to Defendant's motion conform to the applicable federal and local rules of civil procedure, as well as the Undersigned's Policies and Procedures. Failure to submit his opposition in conformity with the applicable federal and local rules, as well as this Court's Policies and Procedures, will be taken into account in reviewing Defendant's motion and Plaintiff's opposition." (emphasis in original)).  His non-compliance with relevant summary judgment directives is consistent with a larger pattern of non-compliance with the Court's directives relative to pleadings, service, and discovery.

[6]     However, in an abundance of caution, the Court has reviewed these documents in detail and finds that they do not create any genuine dispute of fact.  While it is unclear how many of the documents relate to Harris's claims—for example, the multiple technical documents and manuals related to concrete production—even where Harris submits documents the types of which could support a discrimination claim—for example, purported correspondence between Harris and his coworkers and supervisors—the substance of these documents does not create a genuine dispute over any material fact or support any inference of discrimination.

record evidence.[7]   Leeson, J., Policies and Procedures §§ (II)(F)(8)-(9) ("The Court will not

consider a factual assertion that is not supported by a citation to the record. . . . All facts set forth

in the moving party's statement of undisputed facts shall be deemed admitted unless

controverted."); *see* FED. R. CIV. P. 56(c)(3) (providing that "[t]he Court need consider only the

cited materials"); FED. R. CIV. P. 56(e) ("If a party fails to properly support an assertion of fact or

fails to properly address another party's assertion of fact as required by Rule 56(c), the court may

. . . consider the fact undisputed for purposes of the motion . . . ."); *see, e.g.*, *Doe v. United

States*, No. 1:19-CV-1673, 2020 WL 1663336, at *3 (M.D. Pa. Apr. 3, 2020) (deeming facts put

forward by defendant undisputed for purposes of summary judgment where the *pro se* plaintiff

failed to file a response to defendant's statement of undisputed material facts in compliance with

applicable rules, and observing that "[a] party cannot evade these litigation responsibilities in this

regard simply by citing the fact that he is a *pro se* litigant"), *aff'd*, No. 20-1953, 2021 WL

100545 (3d Cir. Jan. 12, 2021); *United States v. Alberto*, No. 3:18-cv-1014, 2020 WL 730316, at

*1 n.1 (M.D. Pa. Feb. 13, 2020) ("Due to the [*pro se*] Defendant's failure to respond to Plaintiff's

Statement of Material Facts, the asserted facts are deemed admitted by the Defendant."); *cf.*

*Brown v. Black*, No. 3:16-CV-1886, 2018 WL 3360979, at *1 (M.D. Pa. July 10, 2018)

---

[7]        The required statements of undisputed material facts and responses thereto

> are not merely superfluous abstracts of the evidence. Rather, they are intended to
> alert the court to precisely what factual questions are in dispute and point the court
> to the specific evidence in the record that supports a party's position on each of
> these questions. They are, in short, roadmaps, and without them the court should
> not have to proceed further, regardless of how readily it might be able to distill the
> relevant information from the record on its own.

*Landmesser v. Hazleton Area Sch. Dist.*, 982 F. Supp. 2d 408, 412 (M.D. Pa. 2013) (quoting
*Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994)), *aff'd*, 574 F. App'x
188 (3d Cir. 2014).

(explaining that where a *pro se* plaintiff "has neither opposed the motion [for summary judgment] nor sought an extension of time in which to do so[, t]he motion is unopposed and the [defendant's] statement of material facts is deemed admitted"); *Harris v. SuperValu Holdings-PA LLC*, No. 06-CV-1054, 2007 WL 1599006, at *2 n.1 (W.D. Pa. June 4, 2007) ("[T]he Courts cannot grant a *cart blanche* suspension of the rules of civil procedure regarding summary judgment to *pro se* plaintiffs. In order to survive a motion for summary judgment, plaintiffs, *pro se* or counseled, must respond with admissible evidence that creates more than a metaphysical doubt as to the essential elements of her claim."), *aff'd*, 262 F. App'x 470 (3d Cir. 2008).

## III.    FACTUAL & PROCEDURAL BACKGROUND

### A.    The undisputed material facts [8]

Keystone is a company that manufactures cements used in the construction of highways, bridges, and buildings.  Keystone's Statement of Undisputed Material Facts ("SUMF"), ECF No. 49-1, ¶ 1.  Keystone is an equal opportunity employer and has policies and procedures in place to address discrimination of any kind.  *Id.* ¶ 4.  Additionally, Keystone has in place an employee code of conduct and a "point" system for employee discipline corresponding to the severity of different employee infractions of the code of conduct.  *Id.* ¶¶ 6-11.  Keystone's human resources department and human resources manager investigate matters that may result in employee disciplinary action.  *Id.* ¶ 17.

---

[8]    As discussed above, these facts are taken from Keystone's statement of undisputed material facts; the Court generally cites to this statement rather than the underlying record.  The Court does not recite factual assertions that are not material, not supported by citations to the record, or that are supported by citations to the record the substance of which does not actually provide support.  *See* FED. R. CIV. P. 56(c)(1); Leeson, J., Policies and Procedures §§ (II)(F)(7)-(8).

Russell Harris was hired by Keystone on June 3, 2013, as a full-time quality technician in Keystone's quality control department.  SUMF ¶ 13. The quality control department consists of one manager (who reports directly to the plant manager), one supervisor, one cement technician, and four or five quality technicians ("QTs").  *Id.* ¶¶ 14-15.  Harris was employed as a QT—and as an at-will employee—for the duration of his employment with Keystone.  *Id.* ¶¶ 20-21. Harris's first supervisor during his employment with Keystone was Barbara Dusseau, followed by James Messler on December 12, 2016, who was in turn followed by Harvey Ortiz on October 16, 2017.[9]  *Id.* ¶¶ 25-29.

Throughout his employment with Keystone, Harris repeatedly had the highest number of unexcused absences and the lowest number of completed quality control tests.  SUMF ¶¶ 31-32. Although Keystone repeatedly offered to train Harris on how to perform each facet of his job, his performance did not improve.  *Id.* ¶ 33.  In particular, Harris received poor performance reviews on February 12, 2014, May 9, 2014, and March 30, 2015.  *Id.* ¶¶ 34-39.  On June 4, 2015, the on-duty production supervisor commented on Mr. Harris's performance, to which Mr. Harris replied, "go fuck yourself."  *Id.* ¶ 40.  As a consequence, and pursuant to Keystone's code of conduct, Harris was issued a five-day suspension.  *Id.* ¶ 41.

After his suspension, Harris complained that the quality control manager and human resources manager made him feel "small," which Harris attributed to his race.  SUMF ¶ 42.  As a result, the vice president of human resources conducted an investigation and found no support for Harris's allegation, and moreover concluded that Harris was properly disciplined for his use

---

[9]     Harris testified at his deposition that Barbara Dusseau was "fair," "[o]r better," as a supervisor.  SUMF ¶ 27.  He also testified that Harvey Ortiz was a "good" supervisor and "very knowledgeable."  *Id.* ¶ 30.

of profanity.  *Id.* ¶ 43.  Other employees have received the same discipline for similar infractions pursuant to Keystone's code of conduct.  *Id.* ¶ 44.

In 2016, one of Harris's coworkers filed a harassment complaint against him.  SUMF ¶ 45.  The human resources manager investigated and substantiated the complaint, and although Harris could have been subject to termination, he only received verbal counseling.  *Id.*

In October 2016, the human resources manager requested permission to hire an additional QT, allowing Keystone to staff one QT to a "relief" position.  SUMF ¶ 96.  This would allow Keystone to have one additional QT to provide support during the day, and would also allow Keystone to cover other QTs' vacations while avoiding expensive overtime.  *Id.* ¶ 97.  Rather than offer the relief position to a newly hired employee, Keystone offered the position to Harris based on his seniority with the Company.  *Id.* ¶ 98.  Harris began working in the relief QT position in the summer of 2017.  *Id.* ¶ 100.  He did not obtain a salary increase in connection with this assignment, nor did he have any supervisory authority.  *Id.* ¶ 98.  His responsibilities while serving as the relief QT remained the same as those of a rotating QT with limited exceptions.  *Id*. ¶ 99.  In the fall of 2017, the quality control manager resigned and James Messler, Harris's supervisor, was promoted to fill the quality control manager position.  *Id*.  Additionally, QT Harvey Ortiz was promoted to Messler's position as laboratory supervisor.  *Id.*  These personnel shifts made it necessary to move Harris from the relief QT position back to his rotating QT position.  *Id.*  Keystone never filled the relief QT position after Harris was moved back to his rotating QT position.  *Id.* ¶ 101.

From May to October 2017, the Keystone plant manager encouraged the quality department to retain Louis Jany to serve as a consultant to help reach Keystone's goals for its quality control program.  SUMF ¶ 105.  As part of Jany's consulting services, he reviewed every

aspect of Keystone's quality department, including employee performance.  *Id.* ¶ 108.  Jany was critical of Harris's performance.  *Id.* ¶ 109.

 In October 2017, Keystone had an opening for the position of laboratory supervisor. SUMF ¶ 77.  The position required a successful applicant to have a four-year Bachelor's degree in chemistry, as well as experience managing a laboratory.  *Id.* ¶ 78.  Harris never applied to be considered for the position, nor did he express his interest in the position to anyone at currently employed at Keystone, and on October 16, 2017, Harvey Ortiz was promoted from QT to the laboratory supervisor position.[10]  *Id.* ¶¶ 79-83.

In January 2018, Keystone conducted an audit of worker attendance, lateness, early departures, failures to punch in, failures to punch out, and completion rate for quality tests. SUMF ¶ 46.  Harris was the worst performer of any QT in each of these categories.  *Id.* ¶ 47. Specifically, records indicated the following:  Harris was absent eleven times in 2017 (the QT with the next highest number had seven absences); Harris was late for work twenty-one times in 2017 (the QT with the next highest number was late four times); Harris left work early fourteen times in 2017 (no other QT left work early in 2017); Harris failed to punch in for work thirteen times in 2017 (the QT with the next highest number failed to punch in for work seven times); and Harris failed to punch out of work thirty-seven times in 2017 (the QT with the next highest number failed to punch out of work sixteen times).  *Id.* ¶¶ 48-52.  As of January 18, 2018, Harris had already called out of work two times, was late for work once, left early twice, and failed to punch out once; only one other QT had accrued any infraction as of January 18, 2018.  *Id.* ¶ 53.

---

[10]     In its statement of undisputed material facts, Keystone states that Harris "alleges he advised the former Quality Manager, Kim Kurdes of his interest in the position, but Ms. Kurdes never conveyed Mr. Harris's alleged interest to anyone else at Keystone, and she was no longer employed by Keystone at the time the position became available."  SUMF ¶ 80.

Additionally, for several months in 2017 when Harris was working as the "relief" QT, Harris fully completed less than 60% of the required composite tests, partially completed approximately 24% of the composite tests, and entirely failed to run over 17% of the composite tests; he partially completed thirty-eight out of ninety-two composite tests, and did not complete, to any degree, sixteen of the ninety-two composite tests. *Id.* ¶ 55.

Harris's poor time and attendance record, as well as his failure to complete quality tests at a rate comparable to his peers, lowered moral within the quality control department at Keystone. SUMF ¶ 56. Other QTs resented having to do extra work, work longer hours, and work extra shifts due to Harris's conduct. *Id.* Based on his poor attendance and performance, Harris was issued a written warning and one disciplinary "point" on January 22, 2018, for unsatisfactory overall job performance. *Id.* ¶ 57. Although it could have issued discipline and points for each of the above-referenced infractions, Keystone instead issued Harris one written warning/disciplinary point for the infractions collectively. *Id.* ¶ 58. By way of memorandum, on January 22, 2018 Harris's supervisor Harvey Ortiz and the human resources manager conveyed to Harris that "[i]t is our hope we can avoid future performance-related discussions as they may result in further disciplinary action. If you have any questions regarding this matter, or if we may provide you with any assistance that would help you meet your work requirements please see either of us at your convenience." *Id.* ¶ 59.

On July 1, 2018, Harris took a medical leave of absence to have surgery on his hip. SUMF ¶ 62. He took leave pursuant to the Family Medical Leave Act ("FMLA"), and concurrently received Short Term Disability ("STD") benefits. *Id.* ¶¶ 63-64. Keystone offers STD benefits for a period of six months. *Id.* ¶ 65. For the first ten weeks of STD, Harris received his full salary; for the remaining sixteen weeks of STD, he received sixty percent of his

salary.  *Id*.  Harris's FMLA expired September 23, 2018; his STD benefits expired December 30, 2018.  *Id*. ¶ 66.

Upon the expiration of Harris's STD, he was unable to return to work and transferred to Long Term Disability ("LTD").  SUMF ¶ 67.  Consistent with Keystone's standard practice, when Harris transferred from STD to LTD, his employment with Keystone was terminated.  *Id*. ¶ 68.  On March 14, 2018, the Corporate Benefits Manager for Giant Cement Holding, Inc., Keystone's parent company, sent Harris a letter and advised him that his employment with Keystone was terminated due to his transition from STD to LTD.  *Id*. ¶ 69.

### B.    Relevant procedural background

Harris filed his charge of discrimination with the EEOC on July 10, 2018.  *See* ECF No. 2 at 11.  On February 4, 2019, the EEOC issued its findings, concluding that there was no evidence to indicate unlawful discrimination against Harris and informing him of his right to sue.  *See* ECF No. 2 at 8.  Harris commenced this suit with the filing of his complaint on May 3, 2019. *See* ECF No. 2.  After several issues relative to service were resolved, Keystone filed its answer to Harris's compliant on January 17, 2020.  *See* ECF No. 28.

On or about May 8, 2020, the Court received correspondence from counsel for Keystone stating that Harris had on multiple occasions failed to comply with Keystone's discovery requests.  The Court thereafter issued an Order directing a response to these allegations from Harris.  *See* ECF No. 38.  After receiving a response, the Court issued an Order directing Harris to comply with Keystone's discovery requests.  *See* ECF No. 39.  Between May and August 2020, the Court issued a number of additional discovery-related Orders.  *See* ECF Nos. 40-46. Discovery closed on September 21, 2020.  *See* ECF No. 44.

Keystone filed its motion for summary judgment on October 1, 2020.  *See* ECF No. 49.

On November 3, 2020, noting the absence of any response to Keystone's motion, the Court

issued an Order directing that Harris respond to the motion by November 13, 2020.  *See* ECF No.

50.  On November 30, 2020, Harris filed what the Court construed to be a request for leave to

file an untimely opposition to Keystone's motion, *see* ECF No. 51, which request the Court

granted, *see* ECF No. 52.  On December 14, 2020, Harris filed his opposition to Keystone's

motion for summary judgment.  *See* ECF No. 53.  After being granted a request for a short

extension of time to file its reply to Harris's opposition, *see* ECF No. 54, Keystone filed its reply

on January 4, 2021, *see* ECF No. 55.

## IV.      DISCUSSION

### A.       Clarifying what claims Harris is asserting

Before determining whether Keystone is entitled to summary judgment based upon the

undisputed factual record, the Court must determine exactly what claims Harris is asserting in

this lawsuit.  Based on a review of his complaint and related documents, it is clear that Harris is

asserting race-based violations of Title VII of the Civil Rights Act of 1964.  More specifically,

based on the attachment in which Harris lays out "the facts of [his] case," Harris describes,

among other things, "mistreatment," "intimidation," "conditions of hostility, bias, and duplicity,"

and a "racial campaign" being fomented against him.  ECF No. 2 at 6.  From these allegations,

the Court construes Harris's complaint to be asserting claims for race-based discrimination and

the creation of a race-based hostile work environment, in violation of Title VII.  Additionally,

although it is not pleaded with clarity, the Court assumes Harris intends to assert a claim of race-

based retaliation in violation of Title VII.  The Court will therefore address the undisputed

factual record in the context of Title VII claims for race-based discrimination, retaliation, and

hostile work environment.[11]

**B.      The undisputed factual record entitles Keystone to summary judgment on all of Harris's claims**

At the burden of proof stage, claims of employment discrimination and retaliation[12] are

generally subject to the burden-shifting framework set forth in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973).  Under this framework,

> the plaintiff must first establish a *prima facie* case of discrimination . . . . If a plaintiff establishes a *prima facie* case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse action against the employee. The plaintiff then must establish by a preponderance of the evidence that the employer's proffered reasons were merely a "pretext for discrimination, and not the real motivation for the unfavorable job action."[13]

*Jajua v. Diakon Lutheran Soc. Ministries*, 299 F. Supp. 3d 645, 652 (E.D. Pa. 2018) (quoting

*Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003)).  Whether regarding claims of

race-based employment discrimination and retaliation under *McDonnell Douglas*, or a claim of

hostile work environment, which is not subject to the *McDonnell Douglas* framework, *see*

*Barnett*, 2019 WL 1047496, at *10, to survive a motion for summary judgment a plaintiff must

---

[11]      Although the EEOC construed Harris's charge of discrimination to be alleging age-based discrimination, Harris disputes that he intended to raise such a claim and he does not seek to raise such a claim now.  *See* ECF No. 2 at 16 ("[Age] was never a charge that I pursued as an interest of mine at anytime, and was never mentioned in that vein in any of my writings to the commission.").

[12]      Retaliation is a species of discrimination. *Darrington v. Milton Hershey Sch.*, 958 F.3d 188, 196 (3d Cir. 2020) ("Retaliation is . . . a form of 'discrimination' because the complainant is subjected to differential treatment." (quoting *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173-74 (2005))).

[13]      Where a plaintiff can present *direct* evidence of discrimination, the *McDonnell Douglas* burden-shifting framework does not apply.  *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002).  Additionally, "[h]ostile environment claims are . . . not subject to the *McDonnell Douglas* burden shifting framework." *Barnett v. Lowes Home Centers, LLC*, No. CV 18-2064, 2019 WL 1047496, at *10 (E.D. Pa. Mar. 5, 2019).

initially be able to point to undisputed facts that establish the *prima facie* elements of each claim. "To establish a prima facie case at summary judgment, 'the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case.'" *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013) (quoting *Duffy v. Paper Magic Grp.,* 265 F.3d 163, 167 (3d Cir. 2001)).  "If a plaintiff fails to raise a genuine dispute of material fact as to any of the elements of the prima facie case, she has not met her initial burden, and summary judgment is properly granted for the defendant."  *Id*. (citing *Geraci v. Moody–Tottrup, Int'l, Inc.,* 82 F.3d 578, 580 (3d Cir. 1996)).

Here, because Harris cannot establish *prima facie* claims of race-based discrimination, retaliation, or hostile work environment, Keystone is entitled to summary judgment on each claim.

### 1.    *Race-based discrimination*

To establish a *prima facie* claim of race-based disparate treatment discrimination, a plaintiff must point to evidence that supports that (1) he was a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) members of outside the class were treated more favorably or the adverse employment action occurred under circumstances that could give rise to an inference of intentional discrimination. *Goodrich v. Tonelli's Pizza Pub*, 388 F. Supp. 3d 523, 527 (E.D. Pa. 2019); *see Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).  Here, Keystone is entitled to summary judgment as to any claim of race-based discrimination Harris might raise because there can be no genuine factual dispute (1) that Harris did not suffer an adverse employment action, and, even if he did, (2) that any such action did not occur under circumstances giving rise to an inference of discrimination.  Additionally, even if Harris was able to establish a *prima facie* claim, it cannot

be disputed from the record that Keystone had legitimate, non-discriminatory reasons for any allegedly adverse employment action.

### a.     The record establishes the absence of an adverse employment action

In Keystone's memorandum of law in support of its motion, it identifies five potential actions that it interprets Harris as asserting as the basis for his discrimination claims and which it argues do not constitute "adverse employment actions" under controlling law:  (1) Harris's alleged "demotion" from the "relief" QT assignment to his normal rotating shift; (2) Keystone's failure to promote Harris to the position of laboratory supervisor in October 2017; (3) the written warning issued to Harris on January 22, 2018; (4) criticism Harris received by outside contractor Louis Jany; and (5) Harris's 2017 performance review.[14]  Keystone's Memorandum in Support of its Motion ("Keystone Mem."), ECF No. 49-12, at 17.  The Court agrees that to the extent Harris is attempting to base his race discrimination claims on these acts, they do not constitute "adverse employment actions" under applicable law.

"The Supreme Court has interpreted 'adverse employment action' to mean 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Remp v. Alcon Labs., Inc.*, 701 F. App'x 103, 106-07 (3d Cir. 2017) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).  In the context of a Title VII discrimination claim,[15] "[a]n adverse employment action involves activity by an employer 'that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'"

---

[14]     These allegations are made in the statement annexed to Harris's EEOC charge, which is contained in Exhibit 7 to Keystone's motion for summary judgment.  *See* ECF No. 49-10.

[15]     As discussed further below, the definition of an "adverse employment action" in the context of a Title VII *retaliation* claim varies slightly.

*Reyes v. AutoZone, Inc.*, No. CIV.A 08-847, 2009 WL 4559454, at \*5 (W.D. Pa. Dec. 2, 2009)

(quoting *Storey v. Burns International Security Services,* 390 F.3d 760, 764 (3d Cir. 2004)

(citation omitted)).   "Lateral transfers, changes of title, and different reporting relationships,

generally do not constitute adverse employment actions."   *Id*. (citing *Langley v. Merck &*

*Company, Inc.,* 186 Fed. Appx. 258, 260 (3d Cir. 2006)).

Here, Harris's transfer to "relief" QT did not constitute a promotion; nor did his return to

"rotating" QT constitute a demotion:  Harris did not obtain a salary increase in connection with

the transfer, he did not have any supervisory authority as relief QT, and his responsibilities as

relief QT were largely the same as his responsibilities as rotating QT.  SUMF ¶¶ 98-99.  In

addition to these undisputed facts, there is a complete absence in the record of any facts

indicating that Harris's transfer from relief QT to his former title of rotating QT involved

"significantly different responsibilities," *Remp*, 701 F. App'x at 106, or activity that was "serious

and tangible enough to alter [Harris's] compensation, terms, conditions, or privileges of

employment," *Reys*, 2009 WL 4559454, at \*5.  Therefore, in light of the record, there can be no

genuine dispute that Harris's alleged "demotion," was not, in fact, a demotion, and did not

constitute an adverse employment action.

The Court next turns to Keystone's failure to hire Harris for the position of laboratory

supervisor in October 2017.  That Keystone did not hire Harris for the position did not constitute

an adverse employment action.  First. it is undisputed that Harris did not apply for the position.

SUMF ¶ 79.  While "[c]ourts have generally held that a failure to formally apply for a job

opening will not bar a Title VII plaintiff from establishing a prima facie claim of discriminatory

hiring," to establish such a claim in the absence of having applied for an available position

requires a plaintiff to have made "every reasonable attempt to convey his interest in the job to the

employer." *E.E.O.C. v. Metal Serv. Co.*, 892 F.2d 341, 348 (3d Cir. 1990).  Keystone states it had no indication that Harris was ever interested in the position, SUMF ¶¶ 79-80, and there is nothing in the record to indicate that Harris made "every reasonable attempt to convey his interest" in the lab supervisor position to Keystone.[16]  In the absence of a genuine factual dispute regarding Harris's failure to apply for the lab supervisor position, as well as his failure to express his interest in the position, that Keystone did not hire Harris as laboratory supervisor did not constitute an adverse employment action capable of supporting a discriminatory hiring claim.

The remaining conduct that Harris might argue constituted adverse employment actions relate to criticism of his performance—in the form of Harris's January 22, 2018 written warning, criticism by consultant Louis Jany, and Harris's 2017 performance review.[17]  "In order for a reprimand to amount to an adverse employment action, it must effect a material change in the terms or conditions of the plaintiff's employment."  *Burton v. Pennsylvania State Police*, 990 F. Supp. 2d 478, 502 (M.D. Pa. 2014), *aff'd*, 612 F. App'x 124 (3d Cir. 2015).  There is no evidence in the record indicating that these actions effected a material change in the terms or conditions of Harris's employment.  Indeed, it cannot be disputed that Harris did not suffer any reduction in pay, reassignment, denial of promotion, termination, or the like, in connection with these actions. *See Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir. 2001) (finding plaintiff failed to establish that two written reprimands effected "a material change in the terms or conditions of his employment" where the plaintiff "was not demoted in title, did not have his work schedule changed, was not reassigned to a different position . . . did not have his hours or work changed or

---

[16]     Moreover, even if Harris had applied, he would not have been selected as he did not have the requisite experience or educational background.  SUMF ¶¶ 78, 82.

[17]     To the extent Harris would argue that his five-day suspension in 2015 for use of profanity on the job also constituted an adverse employment action, *see* SUMF ¶¶ 40-41, setting aside the statute of limitation issues, this argument would fail for the same reasons set forth in this section.

altered in any way, and [ ] he was not denied any pay raise or promotion as a result of the[ ] reprimands"), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *see also Holyk v. Scranton Counseling Ctr.*, No. CV 3:17-0435, 2018 WL 6567793, at *7 (M.D. Pa. Dec. 13, 2018).

Because there can be no dispute that neither the terms nor the conditions of Harris's employment were materially affected by the several reprimands, criticisms, and performance reviews he received, these acts did not constitute adverse employment actions for purposes of Harris's discrimination claims.

> **b.** **The record establishes the absence of circumstances giving rise to an inference of discrimination**

In addition to the absence a genuine dispute over the fact that Harris did not suffer an adverse employment action capable of supporting his race-based discrimination claims, Keystone is entitled to summary judgment on any discrimination claim Harris might assert for an additional reason:  there are no facts in the record capable of giving rise to an inference of discrimination.  As a result, there can be no genuine factual dispute on this point.  *See Goodrich*, 388 F. Supp. 3d at 527.  First, there are no facts in the record indicating that Keystone treated any non-African American employees more favorably that Harris.[18]  *See Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 703 (3d Cir. 2010) ("[A]n inference [of discrimination] could be

---

[18]      The Court recognizes that Harris testified during his deposition that he believes three individuals received preferential treatment compared to him; however, based on his testimony, these assertions appear to be speculation and lack a plausible basis in fact.  *See* Harris Deposition ("Harris Dep."), ECF No. 49-5, at 112-13, 145-47, 154.  Additionally, according to his testimony, Harris learned this information through hearsay statements, which are not admissible and cannot form the basis for factual averments capable of defeating a motion for summary judgment.  *See Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) ("[T]he District Court refused to consider Smith's testimony about Spang's 'political enemy' comment on hearsay grounds. Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment.").

supported in a number of ways, including, but not limited to, comparator evidence, evidence of similar racial discrimination of other employees, or direct evidence of discrimination from statements or actions by her supervisors suggesting racial animus." (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511-12 (2002))).  Also lacking from the record is evidence of racial discrimination of other employees similar to that alleged by Harris, as well as any evidence of comments or conduct of Harris's supervisors that would support an inference that Harris was discriminated against because of his race.

Therefore, for this additional reason, Harris is unable to establish a *prima facie* claim of race-based discrimination.

> **c.    The record establishes the existence of legitimate, non-discriminatory reasons for Keystone's conduct**

Even if Harris was able to point to the undisputed factual record and establish a *prima facie* claim of race-based employment discrimination, the Court agrees with Keystone that from that same record there can be no genuine dispute that Keystone had legitimate, non-discriminatory reasons for each of the adverse employment actions Harris might allege.  *See Tomaszewski v. City of Philadelphia*, 460 F. Supp. 3d 577, 593 (E.D. Pa. 2020) ("If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* This burden is one of production, not persuasion"), *appeal dismissed*, No. 20-2184, 2020 WL 7366324 (3d Cir. Aug. 5, 2020).   As such, Keystone would be entitled to summary judgment.  *See id.*

With regard to Keystone's transfer of Harris from the "relief" QT position back to his original "rotating" QT position, the undisputed factual record shows that Keystone had a legitimate business reason for this action:  staffing needs resulting from several personnel transfers.  *See* SUMF ¶ 100.  With regard to Keystone's failure to hire Harris for the laboratory

supervisor position, the undisputed factual record shows that Harris did not apply for the position, Keystone was unaware of any interest Harris may have had in the position, and even if Harris had applied, he would not have been hired as he lacked the requisite educational and experiential prerequisites. *See id*. ¶¶ 77-84. Finally, with regard to the several instances of criticism of Harris's attendance and performance, whether in the context of a performance review, written warning, or comments made by consultant Louis Jany, the undisputed record is clear that Harris's attendance and performance were suboptimal. *See id.* ¶¶ 31-41, 47-55. There is more than enough in the record in this regard to establish a legitimate, non-discriminatory reason for these actions.

For all of these reasons, even if Harris was able to establish a *prima facie* claim of race-based discrimination, Keystone would be entitled to summary judgment for having established legitimate, non-discriminatory reasons for its allegedly discriminatory conduct.

### 2.    *Race-based retaliation*

"To establish a *prima facie* case of retaliation under Title VII, a plaintiff must provide evidence that: (1) he 'engaged in activity protected by Title VII'; (2) the employer took an 'adverse employment action' against him; and (3) there was a 'causal connection' between his 'participation in the protected activity and the adverse employment action.'" *Kengerski v. Allegheny Cty.*, 435 F. Supp. 3d 671, 676 (W.D. Pa. 2020) (quoting *Moore v. City of Philadelphia*, 461 F.3d 331, 341-42 (3d Cir. 2006)). As with claims of discrimination, under *McDonnell Douglas* once a plaintiff has established a *prima facie* claim of retaliation, the burden shifts to the employer to produce evidence of a legitimate, non-retaliatory reason for the allegedly retaliatory conduct. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 799 (3d Cir. 2003).

Keystone is entitled to summary judgment on any claim of race-based retaliation that Harris might assert for essentially the same reasons that it is entitled to summary judgment as to Harris's discrimination claims:  from the undisputed record evidence Harris is unable to establish a *prima facie* case.

Specifically, Harris cannot establish the second or third elements of a *prima facie* claim of retaliation.  Regarding the first element—whether Harris engaged in a "protected activity"— "the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the 'participation clause') and those who oppose discrimination made unlawful by Title VII (the 'opposition clause')."  *Moore*, 461 F.3d at 341 (quoting *Slagle v. County of Clarion,* 435 F.3d 262, 266 (3d Cir. 2006)).  There is nothing in the record to suggest that Harris participated in any protected Title VII proceedings.  *See* 42 U.S.C. § 2000e-3(a).  The only arguable activity in which he engaged that could qualify under the "opposition clause" of Title VII's anti-retaliation provision is his complaint about alleged mistreatment after his suspension in 2015.  *See* SUMF ¶¶ 42-44.  Assuming that this act constituted a protected activity, there is no indication in the record that Harris suffered *any* adverse employment action as a consequence. This is the case even under the less-burdensome "adverse employment action" standard that is applicable under Title VII's anti-retaliation provision vis-à-vis the statute's anti-discrimination provision.  *See Moore*, 461 F.3d at 341 (explaining that in *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006), the Supreme Court "held that a plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination'").  Moreover, without an adverse employment action, the causal element of a *prima facie* claim necessarily remains unsatisfied.

The Court also takes note of the fact that in his EEOC charge of discrimination, Harris did not include any allegation that the termination of his employment constituted a retaliatory adverse employment action.  *See* ECF No. 49-10.  In the context of a discrimination action, "[t]he parameters of [a] civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the [EEOC]." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976)).  "A plaintiff's claim must thus fall 'fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom.'" *Id*. (quoting *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996)).  Because Harris did not allege to the EEOC that his termination constituted retaliatory conduct, to the extent he is attempting to make such an allegation in the instant action he is unable to do so, and Keystone is entitled to summary judgment.[19]

### 3.    *Race-based hostile work environment*

Finally, to the extent Harris is attempting to assert a claim of hostile work environment, this claim also fails on the undisputed factual record, entitling Keystone to summary judgment. To succeed on a claim of race-based hostile work environment, "a plaintiff must show that '1) the employee suffered intentional discrimination because of his/her [race], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the

---

[19]    Similarly, to the extent Harris alleges additional instances of discriminatory and retaliatory conduct in his filings in opposition to Keystone's motion for summary judgment, such allegations are not within the scope of his EEOC charge and cannot be brought in the instant action.

existence of *respondeat superior* liability [meaning the employer is responsible].'" *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)).  As the Court has already determined, there can be no dispute that on the existing record, Harris did not suffer intentional discrimination based on his race.  It is moreover apparent that there can be no dispute on the existing record that any of Keystone's adverse conduct towards Harris was not "severe or pervasive."  *See id*. at 264 ("Whether an environment is hostile requires looking at the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." (internal quotation marks omitted)); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to a violation of Title VII." (internal quotation marks omitted)); *see, e.g.*, *Barnett v. Lowes Home Centers, LLC*, 2019 WL 1047496, at *11 (E.D. Pa. Mar. 5, 2019); *Benny v. Com. of Pa., Dep't of Corr.*, 400 F. Supp.2d 831, 837 (W.D. Pa. 2005), *aff'd sub nom.*, *Benny v. Pennsylvania, Dep't of Corr., State Corr. Inst. at Somerset*, 211 F. App'x 96 (3d Cir. 2006); *compare Gatter v. IKA-Works, Inc.*, 2016 WL 7338770, at *9 (E.D. Pa. Dec. 19, 2016).

Because Harris cannot establish a *prima facie* claim of race-based hostile work environment on the undisputed factual record, Keystone is entitled to summary judgment with respect to this claim.

## V.    CONCLUSION

For the reasons discussed above, the Court finds that there is no dispute as to any material fact in this case.  On the undisputed factual record, Keystone is entitled to summary judgment as

to each claim Harris might be attempting to assert.  Keystone's motion for summary judgment is therefore granted.

A separate Order follows this Opinion.

BY THE COURT:


/s/ Joseph F. Leeson, Jr.
JOSEPH F. LEESON, JR.
United States District Judge